# In the United States District Court
## for the
## Western District of Texas

EMERSON GAITAN FABIAN, et    §
al.                          §
                             §    SA-08-cv-269-XR
v.                           §
                             §
MAUREEN DUNN, et al.         §

## Order

On this day came on to be considered Cornell Defendants' motion to dismiss (docket no. 158), the City of San Antonio's motion to dismiss (docket no. 150), and SAPD Officers' motion to dismiss (docket no. 178).

## Background

The Plaintiffs in this case were unaccompanied minors who entered the United States illegally. They were apprehended by U.S. immigration authorities and detained at the Abraxas Hector Garza Center (hereinafter "Abraxas"). Plaintiffs allege that the U.S. Department of Health and Human Services, Office of Refugee Rights (hereinafter "ORR") and the Division of Unaccompanied Children's Services (hereinafter "DUCS") and Department of Homeland Security, Immigration and Customs Enforcement (hereinafter "ICE") share responsibility for protecting and caring for unaccompanied minors. Cornell Companies, Inc. owns and operates the Abraxas facility, which is located in San Antonio, Texas. Cornell is licensed and monitored by the Texas Department of

Family and Protective Services (TDFPS) to house and provide care to children. DUCS contracted with Cornell to shelter and care for the unaccompanied minors in this lawsuit.

In their Fifth Amended Complaint, Plaintiffs allege that they were subjected to the following abuses while they were being detained at Abraxas:

· Plaintiff Carlos Acosta Ceballos alleges that in the Fall of 2007, Defendant Jose Chapa "tackled him, using excessive force and injuring [his] arm." Acosta Ceballos reported the assault to Defendant Ariana Penalosa and Defendant Jesus Gutierrez, Jr. He alleges nothing was done and he received no medical treatment for his injury. Acosta Ceballos also alleges that he was assaulted by Defendant Jesus Ibarra, "who beat him and struck him in the face, leaving him with a visible black eye." Plaintiff also alleges that he was abruptly transferred to Houston shortly before a scheduled appointment with his attorneys and Defendant James DeLaCruz told him he was "talking too much with his attorneys."

· Plaintiff C.C. alleges he was detained by Border Patrol agents in Eagle Pass, Texas for "nearly a week, given little food, and no showers, all in violation of the *Flores v. Reno* class action settlement...." At the Abraxas facility, C.C. alleges that Defendant Charles Saldana "severely battered [him], punching and kicking him, then beating him with a chair as he lay on the floor." On another occasion, he saw "a number of guards beating another child"

and when he went to that child's defense he alleges Defendants Mario Gomez and Jose Chapa placed him "in a restraint hold with [his] arms hoisted high behind his back, and punched him repeatedly in the back, causing severe pain and injury." He alleges that during this beating he lost consciousness. He was taken to a hospital for treatment. He alleges that after he informed his attorneys of the beating, the U.S. Office of Refugee Resettlement ("ORR") Defendants transferred him to an Indiana facility.

• Plaintiff Gregorio Ruiz Mejia alleges that in December of 2007, Defendants Jose Chapa, Mario Gomez and Hector Ruiz awoke him from his sleep and when he "failed to comply with sufficient speed, they grabbed him by one arm and threw him to the floor with such force that his arm was badly injured and he suffered a blow to the head." Plaintiff alleges he reported the assault to Defendants Jesus Gutierrez, Jr. and Ariana Penalosa, but nothing was done. He alleges that he was subsequently assaulted by Chapa on another occasion (pulling Plaintiff's hands behind his back and forcing them high into the air). In March 2008, he alleges that four guards (Chapa, Gomez, Jesus Mendoza and Reynaldo Flores) "tackled him and, even after being physically subdued, once again hurt his arm."

• Plaintiff D.B.G. alleges that from 2007 to early 2008 he was "assaulted on more than one occasion by Defendants Ibarra, Gomez and Flores." He alleges that one assault left him with "an arm

injury so severe that he was sent to a medical facility for emergency treatment."

- Plaintiff Selvin Hernandez Escobar alleges that in February 2008 he was assaulted and severely beaten by Defendant Mendoza and two other guards. Plaintiff alleges that he was slammed against a piece of furniture so hard that it broke into pieces, that he was punched in the mouth with a metal ring, and slammed against a wall.

- Plaintiff Jose Alejandro Flores Cruz alleges he was verbally harassed and taunted by Abraxas staff and as a result he attempted suicide. He also claims he was denied appropriate mental health care and punished by being made to sleep in the hallway after his suicide attempt. He also alleges that he was placed in total isolation for a week and such treatment was improper and cruel punishment. He also alleges that Defendants Mendoza and Joel Pardo assaulted him and used excessive force against him in February 2008. He also alleges that on another occasion another guard stepped on his neck and twisted his arm which caused great pain.

- Plaintiff L.L.C. alleges that on February 18, 2008 a disturbance occurred at the Abraxas facility. He alleges that even though he was not involved in the disturbance, Defendants Pardo, Erik Quinones, Ruiz and Mendoza along with Defendant San Antonio Police Officers (Juan Torres, Abel Balderas, George Sexton, and

4

Michael Fletcher) assaulted him. He also alleges that SAPD officers tasered him when he was handcuffed. He alleges that "Defendant City of San Antonio had a custom and policy of such excessive force and cruelty."

- Plaintiff Emerson Gaitan Fabian alleges that in the Fall of 2007, he was assaulted by Defendants Gomez, Ibarra, Chapa, Pardo and Charles Saldana. He alleges that at one point he was "face down on the ground with one of the Defendants holding his arms, another his legs while a third Defendant repeatedly punched him in the back with his fists."

- Plaintiff Edwin Joel Ramirez Aguilar alleges that he was assaulted by Defendants Chapa and Flores (grabbed by the neck, thrown violently to the ground, hands held behind his back into the air, and Chapa sat on his knees for an hour causing him to lose sensation).

The Plaintiffs all allege that they have seen other children assaulted and have reported the abuse to Abraxas staff. Plaintiffs Ramirez and Ruiz allege that they reported such abuse to Defendant Jose Gonzalez. The Plaintiffs allege that Defendant Cornell has a custom, practice and policy of authorizing such abuse. Plaintiffs allege that Defendant Gonzalez informed other federal government authorities of the abuse. Plaintiffs also allege that the Texas Department of Family and Protective Services (TDFPS) Defendants received reports of child abuse at the Abraxas facility from a number of sources from the Fall of 2007 through April 2008. Plaintiffs further allege that the TDFPS

5

Defendants notified the ORR Defendants, but no governmental agency took action to prevent the abuses. Plaintiffs further allege that on February 6, 2008, the Women's Commission for Refugee Women and Children visited the Abraxas facility, interviewed the children and thereafter contacted Defendants Susana Ortiz-Ang, Sergio Fernandez and Jesus Gutierrez expressing grave concerns regarding the conduct of Defendants Chapa, Ibarra and Flores.

Plaintiffs allege that Defendants Maureen Dunn, Jose Gonzalez, James DeLaCruz, Susana Ortiz-Ang, and Cornell, despite having knowledge of ongoing abuse, refused and failed to provide a safe environment.

Plaintiffs allege that the ORR Defendants were aware of Defendant Cornell's history of abuse, but nevertheless selected Cornell to house and care for the unaccompanied minors. Plaintiffs allege that the ORR Defendants have a policy, custom or pattern of deliberate indifference with regard to selecting, monitoring and supervising facilities that care for unaccompanied minors.

In addition, Plaintiffs allege that during February and March 2008, Defendants Chapa, Penalosa, Jose Gonzalez and Jesus Gutierrez interfered with their ability to speak and meet with their attorneys.

Plaintiffs further allege that they were retaliated against after their lawyers filed reports of child abuse. A number of the Plaintiffs were certified to receive a u-visa (crime victim cooperating with law enforcement). Plaintiffs allege that Defendant David Scarberry attempted to get the u-visa certifications revoked. Plaintiff Gregorio Ruiz Mejia alleges that Defendant Scarberry

prevented Plaintiff from attending an asylum hearing that was scheduled.[1]

With regard to the Cornell Defendants, Plaintiffs assert the following:  (1) a *Bivens* claim asserting that Defendants violated their Fifth Amendment right to not be subject to physical abuse; (2) a *Bivens* claim asserting that Defendant Scarberry retaliated against Gregorio Ruiz Mejia; (3) a section 1983 excessive force claim against Defendants Gutierrez, Fernandez, Ruiz and Mendoza; (4) a state law assault and battery claim against Chapa, Ibarra, Saldana, Gomez, Flores, Mendoza, Ruiz, Pardo, Mario Charles, and Quinones; and (5) a respondeat superior claim against Cornell for the tortious acts of its employees.

With regard to the City of San Antonio Defendants, Plaintiffs assert the following: (1) a section 1983 excessive force claim against Officers Juan Torres, Abel Balderas, George Sexton, and Michael Fletcher; (2) a section 1983 *Monell* claim alleging that the City has a policy, pattern and practice of using excessive force; (3) a section 1983 claim against the City for failing to properly train its officers; and (4) a section 1983 claim against the police officers for false arrest.

## Cornell Defendants' Motion to Dismiss

The Cornell Defendants seek dismissal of Plaintiffs' claims arguing: (1) no *Bivens* claim may be brought against either the corporate entity nor against any of the individual defendants; (2) the alleged excessive force claims fail to rise to the standard of "gross physical abuse" necessary to establish a Fifth Amendment

---

[1] The various federal governmental defendants and federal employees have filed motions to dismiss that remain pending before the Court.  Nevertheless, the background facts are recounted here in their totality for context.

claim; (3) Plaintiffs fail to state facts sufficient to establish a *Bivens* claim for supervisor liability; (4) Plaintiff L.L.C.'s section 1983 claim fails because: (i) he has no standing to assert a Fourth Amendment claim; (ii) any Fourteenth Amendment claim is precluded by the availability of state remedies; (iii) the Cornell Defendants were not acting under color of state law; and (iv) the allegations fail to state a claim of conspiracy to use excessive force or make a false arrest. Finally, the Cornell Defendants seek dismissal of the state tort claims of assault and battery arguing that the Plaintiffs fail to state a claim or alternatively the Court should decline to exercise any supplemental jurisdiction over the state tort claims.

## City of San Antonio's Motion to Dismiss

The City argues that Plaintiffs have failed to state a claim inasmuch as they fail to establish that any policy or custom of excessive force exists. The City further argues that Plaintiffs have failed to establish their failure to train claim. Finally, the City seeks dismissal of the claims made against the individual police officers citing Tex. Civ. Prac. & Rem. Code §§ 101.106(a), (b) and (e).

## SAPD Officers' Motion to Dismiss

The individual officers seek dismissal of the section 1983 claims made against them on the basis of qualified immunity.[2]

## Analysis

**I.     *Bivens* claim against Cornell Companies, Inc.**

---

[2] Plaintiff L.L.C. has agreed to withdraw any section 1983 claims brought against the SAPD officers in their official capacities.

To succeed on a *Bivens* cause of action, the plaintiff must demonstrate a constitutional violation. *Garcia v. U.S*, 666 F.2d 960, 961 (5th Cir. 1982). A *Bivens* action is analogous to an action under § 1983 except that § 1983 applies to constitutional violations by state, rather than federal actors. The Fifth Circuit does not distinguish between *Bivens* and § 1983 claims. *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005). There is no private right of action, pursuant to *Bivens*, for damages against private entities such as Cornell Companies, Inc. that engage in alleged constitutional deprivations while acting under color of federal law. *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001); *Marsaw v. Thompson*, 133 Fed. Appx. 946 (5th Cir. 2005). Accordingly, Defendants' motion to dismiss any *Bivens* claim against Cornell Companies, Inc. is granted.

## II.    *Bivens* claim against individual employees of Cornell Companies, Inc.

While *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001), forecloses a *Bivens* action against a corporation, it leaves open the question of whether a *Bivens* action could lie against individual employees of such a corporation. *See Bender v. General Services Admin.*, 539 F. Supp. 2d 702 (S.D. N.Y. 2008) (discussing various cases). In *Peoples v. CCA Detention Centers*, 422 F.3d 1090 (10th Cir. 2005), aff'd by equally divided en banc panel, 449 F.3d 1097 (2006), the Tenth Circuit held that a plaintiff could not avail himself of a *Bivens* action against individual employees of a private corporation that operated a

9

prison under contract with the United States Marshal Service.  *Id.* at 1108.  The *Peoples* court relied heavily on statements in *Malesko* recounting the Supreme Court's history of refusing to extend *Bivens* where a plaintiff has other remedies available.  The same conclusion was reached by the Fourth Circuit on similar reasoning.  *Holly v. Scott*, 434 F.3d 287, 296 (4th Cir. 2006).

A contrary position was taken by the district court in *Sarro v. Cornell Corrections, Inc.*, 248 F. Supp. 2d 52 (D.R.I. 2003).  The *Sarro* court found "private prison guards to be federal actors within the meaning of *Bivens*."  *Id.* at 61.  It found that such guards act "under color of federal law" because of the role they play in exercising "powers traditionally exclusively reserved to the government."  *Id.* at 60.  The *Sarro* court also noted that "[f]inding private prison guards to be federal actors within the meaning of *Bivens* also is consistent with the weight of authority holding them to be state actors within the meaning of § 1983."  *Id.* at 61.  The *Sarro* court concluded that there was "no manifestation of any Congressional intent to preclude" a remedy under *Bivens*, where "Congress has not provided any comprehensive scheme for redress" of constitutional abuses by private prison guards.  *Id.*

This Court has not located any Fifth Circuit cases on point.  This Court does note, however, that the Fifth Circuit has repeatedly stated that a *Bivens* action is analogous to an action under § 1983 and it does not distinguish between *Bivens* and § 1983 claims.  *See e.g. Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).  The above presents a close question.  This Court does not find

persuasive Defendants' argument that they were not acting under color of federal law.   Nevertheless, *Malesko* cautions against extending *Bivens*. Plaintiffs have state law claims of assault and battery available to them. Pursuant to Defendants' argument that they are mere private actors, Defendants will not have any qualified immunity defense.   Accordingly, Defendants' motion to dismiss any *Bivens* claim against the individual employees of Cornell Companies, Inc. is granted.[3]

## III.   Plaintiff L.L.C.'s section 1983 claim

## A.   Availability of state law claims argument

Relying upon *Moore v. Willis I.S.D.*, 233 F.3d 871 (5th Cir. 2000), the Cornell Defendants also claim that Plaintiff's section 1983 claim should be dismissed because of the availability of state law claims.

In *Moore*, the Fifth Circuit stated:

> We have held consistently that, as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage. In *Fee v. Herndon*, we reiterated that "[c]orporal punishment in public schools 'is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.'" Educators in states that proscribe student mistreatment and provide a remedy "do not, by definition, act 'arbitrarily,' a necessary predicate for substantive due process relief. We do recognize a student's liberty interest in maintaining bodily integrity. For example, we found that right to have been violated by a

---

[3] Given the Court's ruling that a *Bivens* claim may not be brought against any of the individual employees, the Court will not address whether Plaintiffs fail to state facts sufficient to establish a *Bivens* claim for supervisor liability.

teacher's conduct in *Doe v. Taylor*.  But *Taylor* is distinguishable from Aaron's case. Taylor involved the sexual molestation of a student by her teacher, acts unrelated to any legitimate state goal. In contrast, this case involves excessive exercise imposed as punishment to maintain discipline, and discipline is clearly a legitimate state goal. It must be maintained in school classrooms and gymnasiums to create an atmosphere in which students can learn.

*Moore v. Willis I.S.D.*, 233 F.3d at 874-75 (citations omitted).

Plaintiffs distinguish *Moore* arguing that its holding merely applies in the educational context.  The Fifth Circuit has not definitely stated whether a section 1983 claim should be dismissed because of the availability of state law claims.

A number of circuit courts, including the Fifth Circuit, have proceeded to apply the usual section 1983 framework to detention facilities operated by for-profit entities. See e.g. *Boyd v. Corrections Corp. of America*, 380 F.3d 989 (6th Cir. 2004); *Ziegler v. Watkins*, 92 Fed. Appx. 684 (10th Cir. 2004); *Joyce v. Correction Corp. of America*, 229 F.3d 1147 (5th Cir. 2000).  Although at first blush it would appear consistent with *Malesko* and *Moore* to dismiss Plaintiff's section 1983 claim because he has other state remedies available to him, the Court declines to dismiss on this new novel basis.

### B.    Under color of state law argument

Defendants argue that they did not act under color of state law.[4]  Plaintiffs plead in their Fifth Amended Complaint that Cornell is licensed and monitored

---

[4] Defendants now appear to argue that they were not state actors, but only federal actors.

by the Texas Department of Family and Protective Services (TDFPS) to house and provide care to children.[5]    Otherwise, Plaintiffs plead that the U.S. Department of Health and Human Services, Division of Unaccompanied Children's Services ("DUCS") contracted with Cornell to shelter the unaccompanied minors.[6]  Pursuant to *Gallien v. Correction Corp*., 91 F.3d 140 (5th Cir. 1996), a private detention facility can be acting under color of state law if it operates and manages a state prison through a contractual relationship with the state.  However, in this case, Defendants' contract was not with the State of Texas, but rather with the federal government.

Plaintiffs attempt to overcome this obstacle by arguing that the Cornell Defendants were acting in a joint enterprise and/or conspiracy with a state official.  Specifically, they argue that Cornell acted in a joint enterprise and/or conspiracy with the San Antonio Police Department when SAPD officers responded to a disturbance at the facility on one occasion.  Plaintiffs allege that not only did Cornell Defendants summon the police, they identified children to be handcuffed, and some of the Cornell Defendants and SAPD officers jointly assaulted various children.

It is clear that the mere summoning of the SAPD officers to respond to a disturbance at the facility is insufficient to establish that the Cornell Defendants and SAPD were acting jointly such to trigger "under color of state law" status upon the Cornell Defendants.  *See Arlotta v. Bradley Center*, 349 F.3d 517 (7th

---

[5] Plaintiffs' Fifth Amended Complaint at ¶ 177.

[6] *Id*. at ¶¶ 178 - 187.

Cir. 2003).

Under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), however, a private party can be deemed a state actor if he or she is a "joint participant" with a state official in the offending enterprise. *Id.* at 931.  To establish that the Cornell Defendants were joint participants with the SAPD officers, Plaintiff is required to demonstrate that the Cornell Defendants and SAPD officers knowingly participated in the alleged conspiracy.  *See Ballard v. Wall*, 413 F.3d 510, 519 (5th Cir. 2005).

Inasmuch as dismissal is sought pursuant to a motion to dismiss (and not a motion for summary judgment), the Court finds that Plaintiffs adequately pled their claim that the Cornell Defendants and SAPD officers knowingly participated in the alleged conspiracy.  Accordingly, the motion to dismiss on the basis that the Cornell Defendants were not state actors is denied.

## C.    Defendants' claim that L.L.C. lacks standing to bring a Fourth Amendment claim

Relying upon *Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006), the Cornell Defendants argue that Plaintiff L.L.C. lacks standing to bring his Fourth Amendment excessive force claim.  This Court is not persuaded. Although the Fifth Circuit stated in dicta that "[t]here may be cases in which an alien's connection with the United States is so tenuous that he cannot reasonably expect the protection of its constitutional guarantees", the Court went further and stated that "the nature and duration of Martinez-Aguero's

contacts with the United States, however, are sufficient to confer Fourth Amendment rights." *Id.* at 625.  In this case, L.L.C. was under the care and control of immigration authorities well inside U.S. territory.  L.L.C. was not being detained at the border.  Unlike Martinez-Aguero, he was not a transient visitor.  The Fifth Circuit has recognized that whatever due process excludable aliens may be denied by virtue of their status, they are entitled under the due process clauses of Fifth and Fourteenth Amendments to be free of gross physical abuse at hands of state or federal officials. *Lynch v. Cannatella*, 810 F.2d 1363, 1373-74 (5th Cir. 1987).  An attempt to dismiss a similar allegation merely because it has been raised as a Fourth Amendment claim makes little sense.  Accordingly, the motion to dismiss on the basis that Plaintiff L.L.C. lacks standing to bring a Fourth Amendment excessive force claim is denied.

**D.    Defendants' argument that Plaintiff L.L.C. has failed to establish the requisite excessive force**

Relying upon *Hudson v. McMillan*, 503 U.S. 1 (1992), Defendants argue that not every malevolent touch by a prison guard establishes a constitutional violation.  The Supreme Court in *Hudson* held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  The Supreme Court further stated: "Under the *Whitley* approach, the extent of injury suffered by an inmate

is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.' 475 U.S., at 321, 106 S.Ct., at 1085. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' *Ibid*. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7.

In this case, Plaintiff L.L.C. has pled that he was not involved in the facility disturbance, but nevertheless he was assaulted, put in handcuffs, and thereafter tasered by SAPD officers.[7]  Again, Defendants bring a motion to dismiss, Plaintiff L.L.C. has adequately pled his claim alleging that the Cornell Defendants conspired with SAPD officers to assault him.  Defendants' motion to dismiss on the basis of failure to adequately establish excessive force is denied. *See Payne v. Parnell*, 246 Fed. Appx. 884, 886 (5th Cir. Sep. 5, 2007) (vacating and remanding summary judgment order).

### E.    False arrest claim

Plaintiff L.L.C. also claims that he was falsely arrested after the disturbance.  Defendants counter that he was already in detention and could not

---

[7] Id. at ¶¶ 97-99, 288-292.

have been falsely arrested. Defendants over-simplify the situation. Plaintiff was in pretrial detention for an alleged immigration violation. He was thereafter arrested[8] for allegedly participating in a melee at the detention facility. If he was not a participant in the melee, but nevertheless arrested for assault or participating in a disturbance, that possibly could establish a false arrest claim. Again this is in a motion to dismiss stage, Plaintiff has pled that the Cornell Defendants and SAPD officers conspired to have him arrested without cause.[9] The competent summary judgment evidence may very well establish that Defendants were justified in Plaintiff's arrest, however, that is not the procedural stage before the Court at this time. Defendants' motion to dismiss the false arrest claim is denied.

The Cornell Defendants' motion to dismiss Plaintiff L.L.C.'s section 1983 claim is denied.

## IV.    Cornell Defendants' motion to dismiss Plaintiffs' pendent state claims

The Cornell Defendants move to dismiss the state tort claims alleging that they do not meet the pleading standards set forth in *Twombley*. For the reasons set forth above, the Court finds that Plaintiffs adequately pled their assault and battery claims, the motion is denied.

## V.    City's Motion to Dismiss

---

[8] The parties appear to disagree whether L.L.C. was arrested or not. At a minimum he was detained and transported somewhere.

[9] Id. at ¶¶ 304-307.

The City seeks dismissal arguing that Plaintiffs have failed to establish, pursuant to section 1983, that the City had a custom or policy that condoned excessive force by its officers. The City further seeks dismissal of Plaintiffs' failure to train allegation arguing that it is procedurally deficient. Finally, the City seeks dismissal of the tort claims brought against the individual police officers citing Tex. Civ. Prac. & Rem. Code §§ 101.106, et seq.

Plaintiffs halfheartedly respond that their pleadings are sufficient. They are not. There is no allegation (other than a conclusory allegation) that the City has a custom or policy condoning excessive force. Likewise, there is only a conclusory allegation that the City failed to train its officers. The City's motion to dismiss these claims is granted.[10]

Under Texas law, "[i]f a suit is filed under [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). The City of San Antonio has so moved. Therefore, any common law causes of action brought against the Officer Defendants (assault, battery, false imprisonment, intentional infliction of emotional distress)[11] are dismissed pursuant to Section 101.106(e). *See Mission*

---

[10] Recognizing that their pleadings may be deficient, Plaintiffs seek leave to amend their complaint. That request is denied at this time. Plaintiffs may file a motion for leave to file an amended complaint (which includes as an attachment a copy of their proposed amended complaint which cures these deficiencies). Thereafter, if such a motion for leave is filed, the Court will hear from the City and then issue its ruling.

[11] The Court is unsure whether any common law causes of action have been pled against the individual police officers. The Court's reading of the Fifth Amended Complaint appears to only allege section 1983 claims against the individual officers.

*Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

## VI.    SAPD Officers' motion to dismiss

The individual officers seek dismissal of the section 1983 claims made against them on the basis of qualified immunity.[12]  Plaintiff L.L.C. alleges that on February 18, 2008 a disturbance broke out at the Abraxas facility; he was not a participant in the melee, but four SAPD officers nevertheless tackled him, handcuffed him, assaulted him and then tasered him.[13]

The first inquiry for the Court is whether the facts alleged, taken in the light most favorable to Plaintiff, show that Defendants violated his Fourth Amendment rights.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (an excessive force claim arising in the context of an arrest is most properly characterized as invoking the protections of the Fourth Amendment).  Claims that police officers used excessive force are analyzed under the Fourth Amendment's objective reasonableness standard.  *Id.*  This reasonableness determination requires a balancing of "the nature and intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998).  Proper application of the Fourth Amendment's reasonableness test requires careful attention to the facts and circumstances of each particular case.  The Court must consider "the severity of the crime at

_____

[12] Plaintiff L.L.C. has agreed to withdraw any section 1983 claims brought against the SAPD officers in their official capacities.

[13] Plaintiffs' Fifth Amended Complaint at ¶¶ 95 - 102, 287 - 292, 304 - 307.

issue, whether the suspect pose[d] an immediate threat to the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Id.* The fact that police officers are required to make split second judgments under tense and rapidly evolving circumstances is considered. *Id.* If the officer reasonably but mistakenly used excessive force, he is entitled to qualified immunity. *See id.*

The facts here are in dispute. Plaintiff L.L.C. claims he was in no way involved in the melee and the SAPD officers came upon him with no cause. The Defendant Officers deny the claim. Because this is a motion to dismiss, the Court must view the disputed facts in the light as pled by the Plaintiff.

Taking the Plaintiff's alleged facts as true, Plaintiff has alleged that his Fourth Amendment rights were violated. Thus, because the events surrounding the events at the facility are in dispute, material fact issues exist regarding whether the alleged use of excessive force was reasonable. With regard to the events at the facility, again taking Plaintiff's allegations that he was assaulted, handcuffed and then tasered without cause, the use of such unnecessary physical force would not have been reasonable.

Turning to the second prong of the qualified immunity analysis, whether a reasonably competent officer in Defendants' position could reasonably have thought his actions to be consistent with the right he alleged to have violated, the Court concludes that the right allegedly violated by Defendants was clearly established in February 2008. Certainly, the Fourth Amendment's prohibition of the use of excessive force by the police against seized persons was clearly

established prior to that time. *Gutierrez*, 139 F.3d at 446 (noting that the general right to be free from excessive force was clearly established by 1994). The Court further concludes that, *if* Plaintiff's allegations are true, it would have been apparent to an officer in the Defendants' position that the actions taken were in violation of Plaintiff's Fourth Amendment rights.[14]   Accordingly, the Court denies the motion to dismiss on the basis of qualified immunity.

## Conclusion

Cornell Defendants' motion to dismiss (docket no. 158) is granted in part and denied in part.   Defendants' motion to dismiss any *Bivens* claim against Cornell Companies, Inc. is granted.   Defendants' motion to dismiss any *Bivens* claim against the individual employees of Cornell Companies, Inc. is granted. The Cornell Defendants' motion to dismiss Plaintiff L.L.C.'s section 1983 claim is denied.  Cornell Defendants' motion to dismiss Plaintiffs' pendent state claims is denied.

The City's motion to dismiss (docket no. 150) is granted.   Accordingly, Plaintiffs' section 1983 claim against it is dismissed.

To the extent that any common law causes of action (assault, battery, false imprisonment, intentional infliction of emotional distress) have been brought against the SAPD Officer Defendants, they are dismissed.

The SAPD Officers' motion to dismiss on the basis of qualified immunity (docket no. 178) is denied.

---

[14] This same analysis applies to Plaintiff's other section 1983 claim (right to a liberty interest in being free from unlawful arrest).

It is so ORDERED.

SIGNED this 6 day of August, 2009.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE