# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| Emerson Gaitan Fabian | § | |
| | § | |
| v. | § | SA-08-cv-269-XR |
| | § | |
| Maureen Dunn, et. al. | § | |

## ORDER

On this day came on to be considered the Individual Federal Defendants' motion to dismiss (docket no. 167) and the United States and Official Capacity Federal Defendants' motion to dismiss (docket no. 170).

## Background

The Plaintiffs in this case were unaccompanied minors who entered the United States illegally. They were apprehended by U.S. immigration authorities and detained at the Abraxas Hector Garza Center (hereinafter "Abraxas"). Plaintiffs allege that the U.S. Department of Health and Human Services, Office of Refugee Rights (hereinafter "ORR") and the Division of Unaccompanied Children's Services (hereinafter "DUCS") and Department of Homeland Security, Immigration and Customs Enforcement (hereinafter "ICE") share responsibility for protecting and caring for unaccompanied minors. Cornell Companies, Inc. owns and operates the Abraxas facility, which is located in San Antonio, Texas. Cornell is licensed and monitored by the Texas Department of

Family and Protective Services (TDFPS) to house and provide care to children. DUCS contracted with Cornell to shelter and care for the unaccompanied minors in this lawsuit.

In their Fifth Amended Complaint, Plaintiffs allege that they were subjected to the following abuses while they were being detained at Abraxas:

• Plaintiff Carlos Acosta Ceballos alleges that in the Fall of 2007, Defendant Jose Chapa "tackled him, using excessive force and injuring [his] arm." Acosta Ceballos reported the assault to Defendant Ariana Penalosa and Defendant Jesus Gutierrez, Jr. He alleges nothing was done and he received no medical treatment for his injury. Acosta Ceballos also alleges that he was assaulted by Defendant Jesus Ibarra, "who beat him and struck him in the face, leaving him with a visible black eye." Plaintiff also alleges that he was abruptly transferred to Houston shortly before a scheduled appointment with his attorneys and Defendant James DeLaCruz told him he was "talking too much with his attorneys."

• Plaintiff C.C. alleges he was detained by Border Patrol agents in Eagle Pass, Texas for "nearly a week, given little food, and no showers, all in violation of the *Flores v. Reno* class action settlement...." At the Abraxas facility, C.C. alleges that Defendant Charles Saldana "severely battered [him], punching and kicking him, then beating him with a chair as he lay on the floor." On another occasion, he saw "a number of guards beating another child" and when he went to that child's defense he alleges Defendants Mario Gomez and Jose Chapa placed him "in a restraint hold with [his] arms hoisted behind his back,

2

and punched him repeatedly in the back, causing severe pain and injury." He alleges that during this beating he lost consciousness. He was taken to a hospital for treatment. He alleges that after he informed his attorneys of the beating, the ORR Defendants transferred him to an Indiana facility.

- Plaintiff Gregorio Ruiz Mejia alleges that in December of 2007, Defendants Jose Chapa, Mario Gomez and Hector Ruiz awoke him from his sleep and when he "failed to comply with sufficient speed, they grabbed him by one arm and threw him to the floor with such force that his arm was badly injured and he suffered a blow to the head." Plaintiff alleges he reported the assault to Defendants Jesus Gutierrez, Jr. and Ariana Penalosa, but nothing was done. He alleges that he was subsequently assaulted by Chapa on another occasion (pulling Plaintiff's hands behind his back and forcing them high into the air). In March 2008, he alleges that four guards (Chapa, Gomez, Jesus Mendoza and Reynaldo Flores) "tackled him and, even after being physically subdued, once again hurt his arm."

- Plaintiff D.B.G. alleges that from 2007 to early 2008 he was "assaulted on more than one occasion by Defendants Ibarra, Gomez and Flores." He alleges that one assault left him with "an arm injury so severe that he was sent to a medical facility for emergency treatment."

- Plaintiff Selvin Hernandez Escobar alleges that in February 2008 he was assaulted and severely beaten by Defendant Mendoza and two other guards. Plaintiff alleges that he was slammed against a piece of furniture so hard that it broke into pieces, that he was punched in the mouth with a metal

3

ring, and slammed against a wall.

- Plaintiff Jose Alejandro Flores Cruz alleges he was verbally harassed and taunted by Abraxas staff and as a result he attempted suicide. He also claims he was denied appropriate mental health care and punished by being made to sleep in the hallway after his suicide attempt. He also alleges that he was placed in total isolation for a week and such treatment was improper and cruel punishment. He also alleges that Defendants Mendoza and Joel Pardo assaulted him and used excessive force against him in February 2008. He also alleges that on another occasion another guard stepped on his neck and twisted his arm which caused great pain.

- Plaintiff L.L.C. alleges that on February 18, 2008 a disturbance occurred at the Abraxas facility. He alleges that even though he was not involved in the disturbance, Defendants Pardo, Erik Quinones, Ruiz and Mendoza along with San Antonio Police Officers (Juan Torres, Abel Balderas, George Sexton, and Michael Fletcher) assaulted him. He also alleges that SAPD officers tasered him when he was handcuffed.

- Plaintiff Emerson Gaitan Fabian alleges that in the Fall of 2007, he was assaulted by Defendants Gomez, Ibarra, Chapa, Pardo and Charles Saldana. He alleges that at one point he was "face down on the ground with one of the Defendants holding his arms, another his legs while a third Defendant repeatedly punched him in the back with his fists."

- Plaintiff Edwin Joel Ramirez Aguilar alleges that he was assaulted by Defendants Chapa and Flores (grabbed by the neck, thrown violently to the

4

ground, hands held behind his back into the air, and Chapa sat on his knees for an hour causing him to lose sensation).

The Plaintiffs all allege that they have seen other children assaulted and have reported the abuse to Abraxas staff. Plaintiff Ramirez and Ruiz allege that they reported such abuse to Defendant Jose Gonzalez. The Plaintiffs allege that Defendant Cornell has a custom, practice and policy of authorizing such abuse. Plaintiffs allege that Defendant Gonzalez informed other federal government authorities of the abuse. Plaintiffs also allege that the TDFPS Defendants received reports of child abuse at the Abraxas facility from a number of sources from the Fall of 2007 through April 2008. Plaintiffs further allege that the TDFPS Defendants notified the ORR Defendants, but no governmental agency took action to prevent the abuses. Plaintiffs further allege that on February 6, 2008, the Women's Commission for Refugee Women and Children visited the Abraxas facility, interviewed the children and thereafter contacted Defendants Susana Ortiz-Ang, Sergio Fernandez and Jesus Gutierrez expressing grave concerns regarding the conduct of Defendants Chapa, Ibarra and Flores.

Plaintiffs allege that Defendants Maureen Dunn, Jose Gonzalez, James DeLaCruz, Susana Ortiz-Ang, and Cornell, despite having knowledge of ongoing abuse, refused and failed to provide a safe environment.

Plaintiffs allege that the ORR Defendants were aware of Defendant Cornell's history of abuse but nevertheless selected Cornell to house and care for the unaccompanied minors. Plaintiffs allege that the ORR Defendants have a policy, custom or pattern of deliberate indifference with regard to selecting,

5

monitoring and supervising facilities that care for unaccompanied minors.

In addition, Plaintiffs allege that during February and March 2008, Defendants Chapa, Penalosa, Jose Gonzalez and Jesus Gutierrez interfered with their ability to speak and meet with their attorneys.

Plaintiffs further allege that they were retaliated against after their lawyers filed reports of child abuse. A number of the Plaintiffs were certified to receive a u-visa (crime victim cooperating with law enforcement). Plaintiffs allege that Defendant David Scarberry attempted to get the u-visa certifications revoked. Plaintiff Gregorio Ruiz Mejia alleges that Defendant Scarberry prevented Plaintiff from attending an asylum hearing that was scheduled.

**Plaintiffs' claims against the individual federal defendants**

In their first cause of action the Plaintiffs bring a *Bivens* action against Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang alleging that these ORR or ICE employees violated the *Flores* settlement agreement and violated Plaintiffs' Fifth Amendment rights (liberty and property rights in safe and humane conditions and to be free from physical abuse).[1]

In their third cause of action the Plaintiffs bring a *Bivens* action against Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang alleging that these ORR or ICE employees had full knowledge of the physical abuse, but failed to halt the abuse. Plaintiffs also allege that these Defendants conspired with the Cornell

---

[1] The Court's reading of Plaintiffs' Fifth Amended Complaint indicates that this first cause of action has been pled against these Defendants in their individual (not official) capacities. Further, it appears that this first cause of action has only been asserted against these individuals (not against the governmental agencies). See ¶¶ 241, 244.

6

Defendants, aided and abetted the assaults by refusing to take corrective action, "shielding the perpetrators from any consequences, by continuing federal funding, and by obstructing the Plaintiffs' relationship with their attorneys." See ¶¶ 262-263. Plaintiffs allege that this conduct violated their Fifth Amendment rights to be free from physical abuse.

In their fourth cause of action Plaintiffs bring a *Bivens* claim against Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang alleging that these ORR or ICE employees violated their Fifth Amendment rights to be free from physical abuse by awarding a contract to a dangerous facility, and by failing to properly train or monitor the facility. See ¶¶ 270 -278.

In their fifth cause of action, Plaintiffs bring a *Bivens* claim against David Scarberry alleging that he retaliated against certain Plaintiffs by interfering with their u-visa certifications, preventing one Plaintiff from attending his asylum hearing, and by denying that Plaintiff a bond release. Plaintiffs allege those acts violated their First and Fifth Amendments rights to be free from retaliation for having presented their complaints of physical abuse. In addition to damages from Scarberry, Plaintiffs also seek injunctive relief pursuant to 5 U.S.C. § 702. See ¶¶ 280-285.

### Plaintiffs' claims against the federal agencies

Plaintiffs' second cause of action asserts that various federal government employees acting in their official capacities have violated the *Flores* agreement. Pursuant to 5 U.S.C. § 702 the Plaintiffs seek injunctive relief to enforce the

7

*Flores* settlement agreement. See ¶¶ 247, 250, 256.

In Plaintiffs' ninth cause of action Plaintiffs bring negligence claims against the United States Government under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. See ¶¶ 312-316.

In Plaintiffs' tenth cause of action Plaintiffs bring an intentional infliction of emotional distress claim against the United States Government under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, et seq. See ¶¶ 318-328.

### Individual federal defendants' motion to dismiss

The individual federal defendants seek dismissal of Plaintiffs' claims, arguing: (1) they have not been accused of violating any clearly established constitutional rights; (2) they are entitled to qualified immunity; (3) the Fifth Amendment failure to protect claim fails because Plaintiffs have not alleged any facts establishing that any of the federal defendants knew of any risk prior to the incidents in question; (4) Plaintiffs' claims under the *Flores* agreement fail because that agreement provides no relief for the claims asserted here; (5) the *Flores* agreement confers no constitutionally protected rights; (6) Plaintiffs may not seek injunctive relief against a federal employee being sued in his individual capacity; and (7) Plaintiffs lack standing to assert injunctive relief and accordingly this Court lacks jurisdiction to provide such relief.

### U.S. Government's Motion to Dismiss

The Federal Government argues that dismissal is appropriate because: (1) Plaintiffs lack standing to assert injunctive relief; (2) the Flores settlement

agreement does not allow for monetary damages; and (3) the FTCA claims fail because they fall within exceptions to the FTCA's waiver of sovereign immunity.

## Analysis

### I. *Bivens* claim against the individual defendants

To maintain a *Bivens* claim against defendants in their individual capacities, a plaintiff must allege facts demonstrating that the defendants caused plaintiff to suffer a deprivation of a right or interest protected by the Constitution. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).

### A. Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang

In their first cause of action the Plaintiffs bring a *Bivens* action against Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang alleging that these ORR or ICE employees violated the *Flores* settlement agreement and violated Plaintiffs' Fifth Amendment rights (liberty and property rights in safe and humane conditions and to be free from physical abuse). In their third cause of action the Plaintiffs bring a *Bivens* action against Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang alleging that these ORR or ICE employees had full knowledge of the physical abuse, but failed to halt the abuse. Plaintiffs also allege that these Defendants conspired with the Cornell Defendants, aided and abetted the assaults by refusing to take corrective action, "shielding the perpetrators from any consequences, by continuing federal funding, and by obstructing the Plaintiffs' relationship with their attorneys." See ¶¶ 262-263. Plaintiffs allege that this conduct violated their Fifth Amendment rights to be

9

free from physical abuse. In their fourth cause of action Plaintiffs bring a *Bivens* claim against Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang alleging that these ORR or ICE employees violated their Fifth Amendment rights to be free from physical abuse by awarding a contract to a dangerous facility, and by failing to properly train or monitor the facility. See ¶¶ 270 -278.

In essence what the Plaintiffs argue in all of the above claims is that these four individuals failed to oversee the *Flores* agreement, failed to oversee the Abraxas detention facility, and negligently awarded the detention contract to the Cornell Companies. However, these failure to supervise-type claims lack legal merit because respondeat superior liability is not available in a *Bivens* action.[2] *See Toledo v. Bureau of Prisons,* 238 Fed. Appx. 10 (5th Cir. 2007)*; Montoya-Ortiz v. Brown*, 154 Fed. Appx. 437 (5th Cir. 2005); *Pelayo v. U.S. Border Patrol Agent No. 1*, 82 Fed. Appx. 986 (5th Cir. 2003).

The motion to dismiss the *Bivens* claim filed against Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang is granted.

### B.    Defendant Scarberry

In their fifth cause of action, Plaintiffs bring a *Bivens* claim against David Scarberry alleging that he retaliated against certain Plaintiffs by interfering with their u-visa certifications, preventing one Plaintiff from attending his

---

[2] Plaintiffs in conclusory fashion allege that Defendants acted with deliberate indifference. However, conclusory allegations cannot defeat a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs also argue that dismissal is inappropriate because Defendants were employers of the Abraxas staff and had full control of the assailants. Even if these allegations were correct, the Court fails to understand how this is not a respondeat superior liability argument.

asylum hearing, and by denying that Plaintiff a bond release. Plaintiffs allege those acts violated their First and Fifth Amendments rights to be free from retaliation for having presented complaints of physical abuse. In addition to damages from Scarberry, Plaintiffs also seek injunctive relief pursuant to 5 U.S.C. § 702.

Defendant Scarberry argues that pretrial detainees do not have a right to confinement in a particular institution and accordingly no *Bivens* claim is viable because Plaintiffs have not alleged facts demonstrating that he caused Plaintiffs to suffer a deprivation of a right or interest protected by the Constitution. Defendant's argument is misplaced. Plaintiffs argue that Defendant Scarberry retaliated against them for raising their physical abuse complaints. They allege Defendant Scarberry interfered with their u-visa certifications, prevented one Plaintiff from attending his asylum hearing, and denying one plaintiff a bond release. Plaintiffs have alleged a chronology of events from which retaliation may be plausibly inferred. Defendant Scarberry's motion to dismiss the *Bivens* monetary damages claim alleged against him is denied. However, the Plaintiffs' claim for injunctive relief from Defendant Scarberry is denied and Defendant Scarberry's motion to dismiss the injunctive relief claim is granted. Plaintiffs fail to allege sufficient facts indicating they are entitled to injunctive relief.[3] A party cannot maintain an action for injunctive relief unless a substantial

---

[3] There is only one minor left in this suit (Plaintiff D.B.G.) who is still in federal custody. Plaintiff D.B.G. makes no allegations that Defendant Scarberry is still responsible in any fashion for D.B.G.

11

likelihood of being injured in the future is demonstrated. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) ("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy.").

## II.   Plaintiffs' standing to assert injunctive relief against the Federal Government

Plaintiffs allege that the *Flores* settlement served as interim federal regulations throughout the time period relevant to this suit. Plaintiffs further allege that by violating the *Flores* agreement, the Federal Government has violated its own agency's regulations. Plaintiffs further argue that Plaintiff D.B.G. is still a minor being held in federal detention and accordingly at least that plaintiff has standing to request injunctive relief.[4]

All parties concede that the Abraxas facility is no longer holding detained juveniles. Plaintiff D.B.G. is now being held in a facility in Houston, Texas. Plaintiff D.B.G. argues that injunctive relief is necessary because of the rampant violations of the *Flores* agreement and that the abuses are "hardly limited to the Abraxas facility. Rather, such unlawful actions are clearly systemic and constitute a practice, policy and custom of the U.S. Defendants. No matter where Plaintiff D.B.G. is placed, he remains at harm." Plaintiffs' Response (docket no. 185) at p.8. However, these allegations were not pled in the most recent Complaint and in any event are conclusory. The Federal Government's

---

[4] Plaintiffs stipulate that the remaining Plaintiffs no longer require injunctive relief.

12

motion to dismiss the injunctive relief claim is granted. Plaintiff D.B.G. fails to allege sufficient facts indicating he is entitled to injunctive relief. A party cannot maintain an action for injunctive relief unless a substantial likelihood of being injured in the future is demonstrated. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

### III.  FTCA Claim

The Federal Government argues that the United States may not be held vicariously liable under the FTCA for the actions of a contractor such as Cornell Corrections and the Abraxas staff.

However, in Plaintiffs' Ninth cause of action, Plaintiffs allege that DeLaCruz, Gonzalez, Dunn and Ortiz-Ang were negligent in selecting Cornell and Abraxas as a facility to detain minor immigrants, and that these federal employees were negligent in supervising the Abraxas facility. See Plaintiffs' Fifth Amended Complaint at ¶¶ 310-313. In the Tenth cause of action Plaintiffs allege that these four federal employees by their inactions caused Plaintiffs to suffer from emotional distress and that these federal employees intentionally inflicted emotional distress upon the Plaintiffs. See Plaintiffs' Fifth Amended Complaint at ¶¶ 318-326.

All parties spend considerable resources addressing whether the Abraxas staff should be considered federal employees. Based on how the allegations were pled however, the Court concludes that the FTCA claims are only being alleged against the government for the alleged negligent conduct of its four employees.

The Federal Government also seeks dismissal of the FTCA claim

predicated on the tort of intentional infliction of emotional distress. To establish a claim for intentional infliction of emotional distress, a plaintiff must prove that: "1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993) (internal quotation marks omitted).

The Federal Government appears to argue that an IIED tort is statutorily excepted from FTCA coverage citing 28 U.S.C. § 2680(h). However, the Fifth Circuit in *Truman v. U.S.*, 26 F.3d 592 (5th Cir. 1994) has concluded otherwise.

Lastly, the Government argues that the FTCA claims should be dismissed under the discretionary function exception.[5] The Fifth Circuit has recently addressed the discretionary function exception in *Castro v. U.S.*, 560 F.3d 381 (5th Cir. 2009). The Court repeated that "[t]he exception only covers acts that are discretionary in nature, acts that 'involve an element of judgment or choice.'" *Castro*, 560 F.3d at 387. The Fifth Circuit also repeated the two-step test set forth in *Gaubert* for determining whether the discretionary function exception applies to a federal employee's act or omission. "First, the challenged government action must be 'the product of judgment or choice.'" *Id.* "Under this

---

[5] The "discretionary function" exception provides that the United States is not liable for: "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

14

prong, we determine whether a statute, regulation, or policy mandates a specific course of action. If such a mandate exists, the discretionary function exception does not apply and the claim may move forward. When no mandate exists, however, the governmental action is considered discretionary and the first prong is satisfied.... Second, the court must decide whether the complained of judgment or choice 'is of the kind that the discretionary function exception was designed to shield' because the purpose of the exception 'is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and public policy through the medium of an action in tort.'" *Id.*

As to the first prong, relying upon *Castro v. United States*, Plaintiffs argue that the Fifth Amendment to the United States Constitution, the *Flores* settlement agreement and various provisions of Texas state law mandate a specific course of action and accordingly the discretionary function exception does not apply. In *Castro*, the Fifth Circuit concluded that Border Patrol agents were not entitled to the discretionary function exception if their conduct violated the U.S. Constitution. *Id.* at 389.

Defendants argue that although they are responsible for the detention of undocumented minors, they are provided great discretion in how they select and monitor any outside contractors they retain. They also argue that in exercising their discretion they were required to allocate "limited resources in an economically feasible manner that would maximize the agency's ability to accomplish its objectives." They further argue that they made policy

15

determinations "concerning the amount of resources to devote to monitoring each of the [43] facilities for unaccompanied alien children, including the Abraxas facility, in an attempt to ensure that sufficient oversight of all the facilities was accomplished within the constraints of the resources allocated to the agency."

The Fifth Circuit, as acknowledged in *Castro*, has been less than clear regarding when the discretionary function exception should apply.[6] In *Buchanan v. U.S.*, 915 F.2d 969 (5th Cir. 1990), federal prisoners who were held hostage by Cuban detainees during a prison uprising brought suit against the United States for damages under the Federal Tort Claims Act (FTCA). The federal prisoners argued that "prison officials were grossly negligent in failing to provide them with adequate protection from the Cuban detainees and in failing to prevent the uprising after receiving clear warnings of detainee unrest." *Id*. at 970. The district court held that the discretionary function exception to the FTCA barred the prisoners' claims. The Fifth Circuit affirmed. The Court stated that the discretionary function exception reflected "a congressional intent to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. at 971. The federal detainees alleged that the prison officials violated a federal statute in keeping them safe from harm. It does not appear that there was any Constitutional violation alleged.[7] In affirming, the Court

---

[6] *Castro*, 560 F.3d at 389.

[7] According to Nguyen v. U.S., 65 Fed. Appx. 509, *2 (5th Cir. 2003), this distinction is important ("it is significant that the INS officers did not commit a constitutional violation nor did they engage in any conduct that could be described as in bad faith.").

16

stated: "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference 'requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.'" *Id.* at 972 (internal citations omitted).

In *Vander Zee v. Reno*, 100 F.3d 952 (5th Cir. 1996), the Fifth Circuit dismissed Plaintiff's FTCA claim under the discretionary function exception. The Court stated that the exception "is not satisfied if a 'federal statute, regulation, or policy prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* at *5. Vander Zee's complaint contained "allegations that could be read as either claims for deprivations of constitutionally protected property rights or as state law claims for interference with contract rights and defamation relating to his allegedly coerced resignation and the subsequent settlement agreement entered into between the bank and the government." *Id.* at *4.

Attempting to reconcile the above cases and the *Twombley* standards for pleading, this Court concludes that Plaintiffs' FTCA claims against the four federal actors are barred by the discretionary function exception. Plaintiffs' conclusory statement that the Fifth Amendment, the *Flores* settlement agreement and various provisions of Texas state law mandate a specific course of action fails to identify what specific course of action Defendants were required

17

to take (other than a general requirement that whatever action they take not violate the Constitution or other federal or state law). If this Court were to adopt Plaintiffs' argument, it is difficult to conceive what would be left of the discretionary function exception. Neither party cites to *Garza v. U.S.*, 161 Fed. Appx. 341, 343 (5th Cir. 2005) ("Garza generally alleges that the Government was obligated to keep him safe and free from harm while he remained incarcerated pursuant to 18 U.S.C. § 4042 and the Eighth Amendment to the United States Constitution and that the Government breached this duty by failing to protect him from assault. We join our sister circuits in recognizing that neither section 4042's mandate to protect prisoners nor the Eighth Amendment's prohibition against cruel and unusual punishment define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable. Thus, because the Bureau of Prisons retains sufficient discretion in the means it may use to fulfill any duties imposed under these federal laws, the exception is triggered and this claim was properly dismissed."). This Court finds *Garza* most applicable to this case and accordingly Plaintiffs' FTCA claims are dismissed.

## Conclusion

The motion to dismiss the *Bivens* claim filed against Defendants DeLaCruz, Gonzalez, Dunn and Ortiz-Ang is granted. Defendant Scarberry's motion to dismiss the *Bivens* claim alleged against him is denied. However, Defendant Scarberry's motion to dismiss the injunctive relief claim against him

is granted. The Federal Government's motion to dismiss the injunctive relief claim is granted. Plaintiffs' ninth cause of action (negligence claims against the United States Government) under the Federal Tort Claims Act is dismissed as barred by the discretionary function exception.

It is so ORDERED.

SIGNED this 14 day of August, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE