IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| EMERSON GAITAN FABIAN, *et al.*, § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| v. § | Civil Action No.  SA-08-CV-269-XR |
| § | |
| MAUREEN DUNN, *et al.*, § | |
| § | |
| *Defendants*. § | |

**ORDER ON MOTION TO DISMISS**

Came on this day to be considered Defendant City of San Antonio's Motion to Dismiss (Docket Entry No. 228).  Having considered Defendant's motion, Plaintiffs' response, and Plaintiffs' Sixth Amended Complaint, the motion is DENIED.

**Background**

Plaintiffs are unaccompanied minor immigrants who were apprehended by United States immigration authorities and detained at the Abraxas Youth & Family Services Hector Garza Center ("Abraxas") in San Antonio, Texas.  The Plaintiffs filed suit against the company that owns and operates Abraxas, individual employees of Abraxas, federal officials, state officials, and the City of San Antonio.  Regarding its claims against the City of San Antonio, Plaintiffs allege that officers of the San Antonio Police Department tasered Plaintiff L.L.C. without cause, claiming that the City has a custom, pattern, practice, and policy of authorizing, agreeing to, or acquiescing in the use of excessive force of its officers, including the improper use of tasers, and that it has failed to properly train its officers regarding their improper use of tasers.  The claim is brought against the City pursuant to 42 U.S.C. § 1983.

**Procedural History**

On August 6, 2009, this Court granted the City of San Antonio's motion to dismiss Plaintiffs' claims against the City, stating that there was merely a conclusory allegation that the City had a custom or policy of condoning excessive force and failed to train its officers.[1] The Court denied Plaintiff's motion for leave to amend at that time, stating: "Plaintiffs may file a motion for leave to file an amended complaint (which includes as an attachment a copy of their proposed amended complaint which cures these deficiencies). Thereafter, if such a motion for leave is filed, the Court will hear from the City and then issue its ruling."[2] Plaintiffs amended their complaint without obtaining leave to amend, prompting the Defendants to file answers, the City of San Antonio to file a motion to strike, and Plaintiffs to file their belated motion for leave to amend. The Court granted the motion for leave and dismissed the motion to strike as moot, noting that the remaining Defendants had already answered the complaint.[3] Pending before the Court is the City of San Antonio's motion to dismiss,[4] to which Plaintiffs have responded.[5]

---

[1] Order, Aug. 6, 2009 (Docket Entry No. 188).

[2] *Id.* at 18 n.10.

[3] Order, Feb. 9, 2010 (Docket Entry No. 232). Plaintiffs are reminded to abide by the Court's orders so that the Court may control its docket.

[4] City of San Antonio's Resp. to Pl.s' Mot. for Leave to Amend Compl. & Mot. to Dismiss, Jan. 25, 2010 (Docket Entry No. 228).

[5] Pl.s' Resp. to Def. City of San Antonio's Resp. to Pl.s' Mot. for Leave to Amend Compl. & Mot. to Dismiss, Feb. 5, 2010 (Docket Entry No. 231).

**Legal Standard**

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true and construed in the light most favorable to the plaintiff. *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). A complaint must contain "more than labels and conclusions" and factual allegations must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, -- U.S. ----, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

**Analysis**

The City of San Antonio argues that Plaintiffs' allegations are conclusory and insufficient to meet the pleading requirements to state a claim. To assert a claim against the City pursuant to 42 U.S.C. § 1983, the Plaintiffs must plead facts to show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities are not liable for the constitutional torts of their employees, unless those employees act pursuant to an official policy. *Monell*, 436 U.S.

at 663 n.7; *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000).

Defendants allege that members of the San Antonio Police Department handcuffed and shackled Plaintiff L.L.C., a minor of slight build, "and then assaulted[] and battered Plaintiff L.L.C., causing him severe pain and injury." (6th Am. Compl. ¶ 98.) Plaintiffs continue that "Defendant City of San Antonio had a custom and policy of such excessive force and cruelty, and improper use of tasering devices." (*Id.* ¶ 101). As an initial matter, Plaintiffs' allegations that the Defendant had a custom and policy of excessive force and cruelty is vague and conclusory, and such allegations are insufficient to state a claim against the City. The Court will therefore evaluate Plaintiffs' allegation that the City had a custom and policy that allowed the improper use of tasers by police officers.[6]

Plaintiffs allege that the San Antonio Chief of Police is responsible for setting the express and *de facto* policies of the Department, and he issued tasers to his officers in 2006. (*Id.* ¶¶ A–E, K.) They assert that "[t]he use of tasers on children, handcuffed persons, slight, unhealthy or elderly persons, or persons who might be on drugs creates a high risk of extreme physical harm" and that numerous organizations, including police organizations, have recommended against using tasers on these categories of persons. (*Id.* ¶¶ G, H, I, J) Plaintiffs allege that tasers were used more than twice a week by officers with "a number of people" being killed by police who use a taser on a suspect.[7] (*Id.* ¶¶ N, P.) They state that, upon information and belief, more than fifty incidents involved police

---

[6] Although inartfully pled, the Court interprets Plaintiff's allegation to mean: Defendant had a custom of improper use of tasers that resulted in an excessive use of force. In spite of Plaintiffs' initial allegation of a "policy" that authorized the improper use of tasers, the remaining allegations do not assert that the City had an express policy that authorized the use of tasers in an improper manner.

[7] The Court expects that Plaintiffs will present evidence on summary judgment to support their allegations and demonstrate to the Court that the allegation was reasonable.

administering more than one shot at a suspect and that many incidents involved individuals who are at a higher risk of injury. (*Id.* ¶¶ Q, R.) In spite of the alleged injuries and recommendations regarding the use of tasers, they claim the police chief, who allegedly had knowledge of the incidents and user recommendations, did not discipline officers for their use of the tasers nor did he promulgate rules or policies regarding the use of tasers until September 2008. (*Id.* ¶¶ T–W.) Plaintiffs assert that officers used a taser on Plaintiff L.L.C. who was a minor of slight build who was already handcuffed in 2007. (*Id.* ¶¶ 99, 226.)

> An official policy is a:
>
>> policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. Alternatively, official policy is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Finally, a final decisionmaker's adoption of a course of action tailored to a particular situation and not intended to control decisions in later situations' [sic] may, in some circumstances, give rise to municipal liability under § 1983.

*Sanders-Burns v. City Of Plano*, 594 F.3d 366, 380–81 (5th Cir. 2010) (quoting *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000)). A plaintiff may impose liability on the municipality when the actions of a subordinate are ratified by the final policymaking authority, *i.e.*,

>> when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality

opinion); *see also Milam v. City of San Antonio*, 113 Fed. Appx. 622, 626 (5th Cir. 2004). In addition, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Praprotnik*, 485 U.S. at 127 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see also Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir.2009). Plaintiffs state that their Complaint alleges facts supporting the Chief's ratification of subordinates' conduct or that a pattern of similar incidents and/or incompetence was general or widespread throughout the police force.

The Supreme Court has cautioned, and the Fifth Circuit has reiterated, that application of the ratification theory is limited to prevent it from becoming a theory of *respondeat superior*. *See Praprotnik*, 485 U.S. at 130; *Milam*, 113 Fed. Appx. at 627. Here, Plaintiffs do not claim that the police chief reviewed the decisions of the officers who allegedly used a taser on L.L.C. or the basis for their actions. As a result, the ratification theory is inapplicable.

Plaintiffs' allegations sufficiently state a claim for a general or widespread pattern of an improper use of tasers. Defendant moves to dismiss the claims against the City, arguing that the allegations are vague and conclusory. Plaintiffs have alleged that San Antonio police officers used tasers on individuals against the recommendation of numerous organizations and that the San Antonio Police Chief was aware of those incidents and of the recommendations against using tasers in those cases. This allegation is not a legal conclusion nor is it vague. Plaintiffs may adduce evidence to prove their assertion that officers used tasers on individuals against the recommended use of which the police chief was aware and allowed to continue. Defendant also states that a single incident regarding the use of excessive force is insufficient to indicate an informal policy. This

argument mischaracterizes Plaintiffs' allegations. Plaintiffs allege there were incidents within a twenty month period in which people were killed by the San Antonio Police Department as a result of tasers, that tasers were used at least twice per week, and incidents in which tasers were used involved individuals at a higher risk of harm. (6th Am. Compl. ¶¶ N–R.) Plaintiff L.L.C. states that in accordance with the City's *de facto* custom of misusing tasers, officers used a taser against him—an individual with characteristics that made him susceptible to injury.[8] Plaintiffs have therefore alleged facts sufficient to establish a claim that L.L.C. suffered from an excessive use of force as a result of a custom of the improper use of tasers, which was the driving force behind his injury.

For Plaintiffs to proceed on their allegation of inadequate training against the City of San Antonio, they must demonstrate that: (1) the City's training policy procedures were inadequate, (2) the City was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the injury. *Sanders-Burns*, 594 F.3d at 381. Defendant again states that the allegations are conclusory, but viewing the Amended Complaint as a whole and in the light most favorable to Plaintiffs, they have sufficiently alleged the requirements for municipal liability under § 1983. They allege that the City failed to provide training or guidance to their officers regarding the use of tasers despite knowing information that necessitated limiting the use of tasers in certain situations and against certain individuals. (6th Am. Compl. ¶¶ L–N, T, V.) Plaintiffs allege that officers used a taser on Plaintiff L.L.C. as a result of the inadequate training.

---

[8] In order to survive summary judgment on this claim, Plaintiffs will be required to produce evidence of the date and the nature of the misuse of tasers. For purposes of this motion to dismiss, Plaintiffs have alleged sufficient facts to show, if proven, that the requirements for municipal liability under section 1983 are met.

The City argues that this Court, Judge Orlando Garcia presiding, reviewed the San Antonio Police Department's use of force policy that was in effect on the date when Plaintiff L.L.C. alleges that officers used a taser on him. *See Galvan v. City of San Antonio*, No. SA-07-CV-371-OG, slip op. (W.D. Tex. Oct. 22, 2008)[9]. The City attached the order issued by the Court that granted the City's motion for summary judgment in that case, affidavits, and the SAPD General Manual. Plaintiffs argue that the Court should not consider items attached to the motion to dismiss, stating that this case does not meet the narrow exceptions for a court to consider such documents. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). While the Court can take note of a previous order, it will not consider the other attached affidavits and manual. Even if the Court were to consider the documents, Plaintiffs' complaint involves a *de facto* policy and not the written policies of the SAPD. Furthermore, at this stage of the proceeding, the Court's finding that "no deaths or significant injuries, other than those alleged in [the *Galvan*] lawsuit, have been associated with the use of [Conducted Energy Devices] by SAPD officers" does not preclude Plaintiffs from asserting their claim. *See Galvan*, slip op. at 4. While the statement would preclude some of Plaintiffs' allegations (*e.g.*, "a number of people were killed by San Antonio police officers using taser shots"), Plaintiffs remaining allegations that SAPD used the tasers against individuals who were at a higher risk of serious harm, such as children and persons in handcuffs, are sufficient to state a claim.

## Conclusion

Defendant City of San Antonio's motion to dismiss is DENIED.

---

[9]This order is also available at *Galvan v. City of San Antonio*, No. SA-07-CV-371-OG, 2008 WL 5395954 (W.D. Tex. Dec. 19, 2008). The date provided in the Westlaw database is December 19, 2008, which is incorrect. This order was issued on October 22, 2008.

It is so ORDERED.

SIGNED this 29th day of April, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE